THE PEOPLE ex rel. JAMES H. KEYES and SAMUEL H. CASE, Plaintiffs in Error, v. SAMUEL S. BURNSIDE and DAVID M. MILLER, Defendants in Error.

(GENERAL TERM, THIRD DEPARTMENT, JULY, 1870.)

Where a statute (Laws 1859, ch. 384, § 5), providing for certain town railroad commissioners, declared that in case any commissioner should " refuse, or willfully neglect to perform any part of the duties required, his office should become vacant, and upon proof of the fact to the satisfaction of a county judge, he should appoint some other person to fill the vacancy, —*Held*, that a new appointment was authorized only in case of the commissioners *non-feasance*.

And accordingly, where the county judge declared the office of the commissioners vacant, for selling railroad stock of the town for which they acted, on credit, holding that their powers were limited to a sale for cash,—*Held*, that the order was not based upon a *non-feasance* of the commissioners, and was unauthorized.

It seems, however, that for cause, within the statute, and upon proof thereof made to him, the county judge might declare the office of the commissioners vacant, and make new appointments thereto.

THIS proceeeding was initiated upon the written application of twelve or more freeholders of the town of Oneonta to the county judge of the county of Otsego, praying the removal from office of the relators as railroad commissioners in and for said town, or that said office be deemed and declared vacant, and that the defendants in error be appointed to the said office.

The application was presented to the county judge *ex parte* on the 26th day of August, 1869, accompanied by affidavits to sustain the grounds upon which the application was based, to wit: " 1st. That said commissioners had attempted to sell the railroad stock of said town in violation of law. 2d. That they had attempted to sell the same on credit and for less than par. 3d. That said attempted sale was secretly and clandestinely made. 4th. That they were offered par and more than par by other parties before the alleged sale. 5th. That they have acted and are preparing to act in the future

contrary to the views and wishes of at least nine-tenths of the tax-payers of said town."

The county judge thereupon granted an order, stating that a petition had been filed, asking that certain persons therein named be appointed commissioners, and reciting that the petitioners claimed that the acting commissioners had refused and willfully neglected to perform the duties enjoined upon them by the statute in such case made and provided, and directing the commissioners to show cause before him on the 30th day of August, 1869, why the appointment of other commissioners should not be made, etc.

The plaintiffs in error appeared by counsel before the county judge and objected to his jurisdiction and to his. manner of proceeding as illegal and void, and the objections were overruled. Their counsel thereupon read in answer to the application and moving affidavits, the affidavits of the commissioners and others, and then moved that the proceedings be dismissed on grounds set forth, and the county judge declined to grant the motion.

It appeared that the town owned stock to the amount of $70,000, and that on the 30th of July the relators sold said stock to David Wilber, and received Wilber's check for $10,000, and agreed to deduct $6,633.52 interest claimed by the company and disputed by the town. That balance was to be paid when the stock was issued and transferred to Wilber on the books of the company ; and that the stock had not been transferred. That on the 2d of August this arrangement was changed and the $10,000 check given up, and a check for the whole amount ($62,857), less the interest and a town bond of $508.75 given by Wilber, with a verbal agreement that the check was not to be presented until the stock was transferred. There was proof that Wilber's check was given for $45,000.

On September 1st, 1869, the county judge made an order reciting that proof to his satisfaction had been produced before him, that the commissioners had refused or willfully neglected to perform their duties as commissioners for the town of Oneonta in selling or disposing of the capital stock

of said railroad company owned by said town, on credit, whereby the office of such commissioners had become and was thereby declared vacant; and appointing the defendants in error in their stead commissioners for said town.

On September 6, 1869, a writ of certiorari was duly granted removing the proceedings into this court for review.

*E. Countryman*, for the plaintiffs in error.

*S. S. Burnside*, for the defendants in error.

Present—MILLER, P. J., POTTER and PARKER, JJ.

By the Court—MILLER, P. J. This case involves the question whether the county judge of the county of Otsego had the power to declare the offices of railroad commissioners of the town of Oneonta, in said county, held by the relators, vacant, and to appoint the defendants in error in their places, in accordance with the provisions of chapter 384 of the Laws of 1859, section 5, which reads as follows: "In case any commissioner under the said act, passed March 31, 1856, as amended April 14, 1857, *shall refuse or willfully neglect to perform any part of the duties specified therein, or required by this act*, his office shall thereupon become vacant; and upon proof of the fact, to the satisfaction of the county judge of the county wherein such commissioner shall reside, he shall appoint some other person to fill his place, in the manner now provided by law."

This provision is highly penal in its character, and inflicts a severe penalty upon the delinquent who has violated its requirements. The jurisdiction conferred is limited and special, and the proceeding for the enforcement of the act is of the most summary and rigorous character. The rule is well established, that penal statutes, in declaring what acts shall constitute an offence, and in prescribing the punishment to be inflicted, are to be construed with strictness and rigor. (Dwarris, 736; Sedg. on Stat., 327; *The Watervliet Turn-*

*pike Company* v. *McKean*, 6 Hill, 616.) The charge made against the commissioners was a sale, or an attempted sale, of the stock of the town in the Albany and Susquehanna Railroad Company, in violation of the provisions of chapter 401 of section 6 of the Laws of 1857, which provides that "the said commissioner or commissioners appointed under and by virtue of this act, may at any time, after acquiring such capital stock, exchange the same, in whole or in part, for the bonds issued under the authority of this act; and in such case they shall cancel the bonds so received by them, or they may dispose of such stock in their discretion to any purchaser or purchasers, for cash; but shall not sell or dispose of such stock at less than par, except upon the written consent of a majority of the tax-payers of said town, their heirs or legal representatives, representing a majority of the taxable property of said town appearing upon the last assessment roll, proof of which shall be by affidavit. The said commissioner or commissioners shall then sell the same at public auction, of which twenty days' notice shall be given in two newspapers published in the county wherein said town is located, and in case of sale of said stock either at public or private sale, the proceeds thereof shall be applied by said commissioners to the purchase or redemption of the bonds authorized to be issued by this act, and to no other purpose whatever."

The county judge made an order whereby he declared the offices held by the relators vacant, and appointed other commissioners in their places, upon the ground that they had willfully neglected or refused to peform their duties, in selling or disposing of the stock held by the town *on credit.* The willful neglect and refusal upon which the order was based was, that the commissioners had done an act in violation of their duty, and had been guilty of *misfeasance* in office, and was not upon the ground of a refusal to perform, or a willful *nonfeasance.* In this, I think, that the county judge committed an error. In order to make out a case within the provisions of the section cited, there must be an absolute refusal or a willful neglect to perform some duty imposed by

the act.   The statute evidently was not intended to punish the commissioners for positive acts done by them in violation of law, but for contumacy, in' refusing to obey the mandate of the law, and for willfully and unlawfully neglecting to do what was required by the plain terms and import of the statute.   While the language of the provision cited, negatives the idea that it was intended to authorize an appointment of new commissioners as a mere consequence of a wrongful act, it is quite manifest that it was not designed to embrace a case where there was a mere breach of duty.   Such an interpretation would be extending the statute by construction beyond what its language imports; and if such had been the intention, certainly it would have contained a provision to that effect.

I also think that there is no force in the position that the relators, by selling on credit, neglected and omitted to sell for cash, and therefore were guilty of a willful neglect to perform their duty.   It is a sufficient answer to this proposition to say that the county judge has not found that the relators had an opportunity to sell for cash, and that they refused or neglected to avail themselves of such opportunity and sold upon credit. If the county judge had found that the commissioners had refused and willfully neglected to sell for cash, it may have materially altered the position of the relators ; for it is not difficult to see that a willful refusal or neglect to sell for cash, when the interest of the tax-payers of the town demanded such sale, and when it would be far more advantageous than any other disposition or sale of the stock, might make out a violation of their official duty, within the meaning of the section referred to.   Suppose the commissioners had been offered cash for the stock at its par value, and were certain of obtaining it, and had unlawfully refused the offer, and entered into a contract for a sale at less than par on credit with parties of doubtful pecuniary responsibility, so that it was clear that the tax-payers of the town would be seriously injured by the refusal to sell for cash and at par, can there be any doubt that they would be guilty of a willful neglect of duty ?   I think not. And, under such circumstances, it would be the plain duty

of the county judge to declare their offices vacant, and to appoint their successors. As the county judge did not thus hold, his decision cannot be sustained upon any such ground.

If the view I have taken as to the construction to be placed upon the statute is sound, then it is of no importance to discuss the question, whether the commissioners had a right to sell upon credit, and were bound to sell for *cash* and not less *than par*. It is not inappropriate to say, however, that I am strongly inclined to think that the *discretion* vested in the commissioners, under the sixth section of the act, relates to the time when, and the purchasers to whom they may sell, and that in the reasonable exercise of their *discretion* in this respect, they may select the time of sale, name the persons to whom they will make a sale, as well as the price, the sale being made for not less than par. The evident object of the provision as to a sale for cash and at par, was to protect the tax-payers of the town from the improvident, reckless, and perhaps corrupt acts of these officers, and to limit them in fixing the terms of sale, as is also abundantly manifest, by the exception incorporated in the same section which provides for a sale, at public auction, upon the written consent of a majority of the tax-payers of the town.

I am also of the opinion, that the county judge had authority to declare the offices of the commissioners vacant, and to appoint new officers in the proceeding before him, if a case had been made out within the provisions of the act. Although the statute prescribes no form of proceeding in the premises, except that proof of the fact of such violation of duty shall be made to the satisfaction of the county judge, it is quite evident that it was the intention of the legislature, that the proceeding should be of a summary character, and not technically formal. Otherwise, it might be a useless ceremony, and of no avail whatever. In the case at bar, due notice was given; both parties had a full opportunity to be heard; a full investigation was had, and there is no reason to doubt that the county judge had jurisdiction. The legislature have unquestionably, the power to provide for a summary removal

of officers appointed under local and special enactments, and such authority has been frequently exercised. (See *The People* v. *Platt*, 19 How., 171; *The People* v. *The Board of Metropolitan Police*, 24 How., 481; *People* v. *Bearfield*, 35 Barb., 354.)

Although the proceedings before the county judge were regular, and within his jurisdiction, yet as he exceeded his authority in declaring the offices of the commissioners vacant, for a cause not provided for, and not within the spirit and meaning of the law, they must be reversed.

In a case like this, neither party is entitled to costs. (37 N. Y., 506.)

Order reversed.